FILED IN CHAMBERS
U.S.D.C. - Atlanta

JUN 9 2009

James N. Hatten, Clerk
By: /s/ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MICHAEL BLACKWELL, and JIMMY
WILLIAMS,

    Plaintiffs,

v.

UNITED DRYWALL SUPPLY, INC.,
and CRAIG C. CHENGGIS,

    Defendants.

CIVIL ACTION NO.
1:07-CV-2351-ODE

ORDER

This case brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., is before the Court on Defendants' motion for summary judgment. [Doc. #72]. Plaintiffs have filed a response in opposition to the summary judgment motion [Doc. #79], to which Defendants have filed a reply. [Doc. #83]. Plaintiffs also filed a "supplemental response" to Defendants' motion for summary judgment almost three months after Plaintiffs filed their initial response. [Doc. #84]. Defendants have filed a motion to strike Plaintiffs' supplemental response. [Doc. #84]. Plaintiffs have filed a response in opposition to Defendants' motion to strike. [Doc. #86]. For the following reasons, Defendants' motion for summary judgment is granted.

I.   Factual and Procedural History

The following facts are undisputed, except as otherwise noted.

Defendant United Drywall Supply, Inc. ("UDS") is a drywall distributor that operates in the state of Georgia. [Docs. #72-3 at ¶¶ 1, 3-4, #79-2 at ¶¶ 1, 3-4]. UDS was founded by Defendant

Craig Chenggis ("Chenggis") in 2003. [Docs. #72-3 at ¶ 2, #79-2 at ¶ 2]. According to the UDS employee responsible for purchasing, Debra Cooper ("Cooper"), UDS ordered almost all of its drywall from out-of-state suppliers from 2004 to 2007. Deposition of Debra Cooper at 6-7 [Doc. #75]. Cooper also testified that UDS was very busy during that time period, resulting in a constant stream of drywall deliveries from the out-of-state suppliers. Id. at 9-12. Plaintiffs disagree with this testimony and contend that UDS maintained a full inventory of drywall in the warehouse during the time in question. [Doc. #79-2 at ¶¶ 8, 9].

Plaintiffs Michael Blackwell ("Blackwell") and Jimmy Williams ("Williams") worked for UDS as drivers of "boom trucks." [Docs. #72-3 at ¶¶ 25-26, 32-33, #79-2 at ¶¶ 25-26, 32-33]. A boom truck is a vehicle weighing in excess of 26,000 pounds with a boom attached to the top of the truck to help unload materials. [Docs. #72-3 at ¶ 19, #79-2 at ¶ 19]. Boom truck drivers must have a commercial driver's license or permit in order to operate the trucks. Id.

UDS drivers are responsible for driving the truck to the delivery site and unloading the drywall. [Docs. #72-3 at ¶ 23, #79-2 at ¶ 23]. The drivers typically work in pairs, or in a group of three if the delivery is large enough. [Docs. #72-3 at ¶ 20, #79-2 at ¶ 20]. The drivers are responsible for ensuring the safety of the boom truck. [Docs. #72-3 at ¶ 21, #79-2 at ¶ 21].

Blackwell was employed as a boom truck driver at UDS from approximately June 2003 to April 2007. [Docs. #72-3 at ¶ 25, #79-2 at ¶ 25]. He left UDS to start his own trucking company.

2

[Docs. #72-3 at ¶ 30, #79-2 at ¶ 30]. Williams began working as a driver for UDS in July 2003. [Docs. #72-3 at ¶ 32, #79-2 at ¶ 32].

Suspecting that he was not being paid properly for his overtime, Blackwell contacted the Department of Labor ("DOL"). [Docs. #72-3 at ¶ 40, #79-2 at ¶ 40]. According to Blackwell's deposition testimony, he believes he contacted the DOL sometime in 2005. Deposition of Michael Blackwell at 54 [Doc. #53]. In April 2007, Thomasenia Shepherd ("Shepherd"), a wage and hour investigator at the DOL, investigated UDS' wage and hour practices. [Docs. #72-3 at ¶¶ 40, 41, #79-2 at ¶¶ 40, 41]. Shepherd concluded that UDS had been paying drivers an incorrect overtime rate. [Docs. #72-3 at ¶ 41, #79-2 at ¶ 41]. Pursuant to this investigation, in July 2007 the DOL conducted a supervised settlement of the drivers' back overtime wage claims against UDS. [Docs. #72-3 at ¶ 47, #79-2 at ¶ 47].

Pursuant to the supervised settlement, the DOL sent UDS a "summary of unpaid wages" listing the amounts owed to all of the underpaid drivers. Declaration of Thomasina Shepherd [Doc. #72 Exh. 11 at ¶ 5]. According to Shepard's declaration, her investigation and the subsequent settlement covered the period from May 21, 2005 to May 21, 2007. [Doc. #72 Exh. 11 at ¶ 3]. The parties disagree as to whether the DOL settlement constitutes a full settlement of Plaintiffs' claims; Defendants state that "[p]ursuant to the supervised settlement . . . UDS agreed to pay all back wages owed to the Drivers," [Doc. #72-3 at ¶ 48], while Plaintiffs state that the settlement included only two years of back wages, not three, and no liquidated

damages. [Doc. #79-2 at ¶ 48]. Thus, Plaintiffs contend that, under the DOL settlement, UDS did not pay all of the back wages and damages that Plaintiffs and the other drivers were owed.

UDS issued checks in the amounts indicated in the DOL summary of unpaid wages, and forwarded the checks to the DOL. [Docs. #72-3 at ¶ 56, #79-2 at ¶ 56]. The DOL mailed the check along with a WH-58 form to Williams. [Docs. #72-3 at ¶ 63, #79-2 at ¶ 63]. Blackwell stopped by the DOL offices, where he received a WH-58 form and his check. [Docs. #72-3 at ¶¶ 68, 72, #79-2 at ¶¶ 68, 72]. The WH-58 form is a receipt for payment of unpaid wages. See [Doc. #80 Exh. 1 at 1, Exh. 3 at 1]. Both Blackwell's and Williams' WH-58 forms stated that they acknowledged receipt of payment in full for unpaid wages from UDS for the period up to and including May 20, 2007. [Doc. #80 Exh. 1 at 1, Exh. 3 at 1]. The WH-58 form also stated, in part:

> 1 NOTICE TO EMPLOYEE UNDER THE FAIR LABOR STANDARDS ACT - Your acceptance of back wages due under the Fair Labor Standards Act means that you have given up any right you may have to bring suit for back wages under Section 16(b) of that Act. Section 16(b) provides that an employee may bring suit on his/her own behalf for unpaid minimum wages and/or overtime compensation and an equal amount as liquidated damages, plus attorneys' fees and court costs. The statute of limitations for Fair Labor Standards Act suits requires that a suit for unpaid minimum wages and/or overtime compensation must be filed within 2 years of a violation of the Act, except that a suit for a willful violation must be filed within 3 years of the violation. Do not sign this receipt unless you actually have received payment of all back wages due.

[Doc. #80 Pls.' Exh. 1 at 1]. Neither Blackwell nor Williams signed the WH-58 form, but both men cashed their checks. [Docs. #72-3 at ¶¶ 66, 72, #79-2 at ¶¶ 66, 72].

According to Williams, before cashing his check, he called the DOL and asked for an explanation of how the amount he received was calculated. Deposition of Jimmy Williams at 65-66 [Doc. #47]. The DOL representative refused to explain how the amount was calculated. Id. at 65. According to Blackwell, he also asked for an explanation of how the check amount was calculated, but did not receive one. Blackwell Deposition at 69-72. Blackwell also testified that Shepard never told him that cashing the check would serve as a waiver of his right to file suit. Id. at 82-83. According to Shepard, she explained to both Plaintiffs that accepting the UDS check for their back wages would waive their right to bring suit against UDS. [Doc. #72 Exh. 11 at ¶ 6].

On September 26, 2007, Plaintiffs filed their initial complaint in this case, alleging violations of the FLSA for failure to pay proper overtime and for retaliating against Williams. [Doc. #1 at 6-7]. Williams now abandons his claim for retaliation, [Doc. #79 at 1], and it is accordingly DISMISSED. Defendants have filed a motion for summary judgment on the overtime violation claim [Doc #72], to which the Court now turns.

II. Standard of Review

The Court will grant summary judgment when "there is no genuine issue as to any material fact . . . and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552 (1986) (quoting Fed. R. Civ. P. 56(c)).

Only after the moving party meets this initial burden does any obligation on the part of the non-moving party arise. <u>Chanel, Inc. v. Italian Activewear of Fla.</u>, 931 F.2d 1472, 1477 (11th Cir. 1991). At that time, the non-moving party must present "significant, probative evidence demonstrating the existence of a triable issue of fact." <u>Id.</u> If the non-moving party fails to do so, the moving party is entitled to summary judgment. <u>United States v. Four Parcels of Real Prop.</u>, 941 F.2d 1428, 1438 (11th Cir. 1991).

All evidence and justifiable factual inferences should be viewed in the light most favorable to the non-moving party. <u>Rollins v. TechSouth, Inc.</u>, 833 F.2d 1525, 1532 (11th Cir. 1987); <u>Everett v. Napper</u>, 833 F.2d 1507, 1510 (11th Cir. 1987). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." <u>Four Parcels of Real Prop.</u>, 941 F.2d at 1438 (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986)). However, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." <u>Anderson</u>, 477 U.S. at 248, 106 S.Ct. at 2510.

III. <u>Discussion</u>

Defendants argue that they are entitled to summary judgment for two reasons: first, that Plaintiffs are exempt employees under the Motor Carrier Exemption, and second, that Plaintiffs waived their right to sue for unpaid overtime by accepting checks issued pursuant to a DOL supervised settlement. [Doc. #72 at 6-13, 14-19]. In addition, Defendants argue that the three-year statute of limitations applicable to willful violations should not apply in this case. <u>Id.</u> at 19-22. Plaintiffs argue that there are genuine issues of material fact regarding the waiver of their right to sue and the applicability of the Motor Carrier Exemption. [Doc. #79 at 2-3]. Plaintiffs also argue that there is adequate evidence of willfulness to support application of the three-year statute of limitations.

    A.   <u>Waiver of Plaintiffs' Right to Sue</u>

Defendants contend that by cashing their DOL settlement checks, Plaintiffs have waived their right to sue for back wages, even though neither Plaintiff signed the DOL WH-58 form. [Doc. #72 at 14 <u>et seq.</u>]. Plaintiffs argue that they had no notice that cashing the checks for back wages could waive their right to sue, and therefore, they did not knowingly waive their rights. [Doc. #79 at 18].

Under 29 U.S.C. § 216, an employer who violates the FLSA is liable to the employee for unpaid compensation, as well as liquidated damages and attorneys' fees. 29 U.S.C. § 216(b). The statute also authorizes the Secretary of Labor to supervise the payment of claims for unpaid minimum wages or unpaid overtime compensation. 29 U.S.C. § 216(c). "[T]he agreement of

any employee to accept such payment shall upon payment in full constitute a waiver by such employee of any right he may have under subsection (b) of this section to such unpaid minimum wages or unpaid overtime compensation and an additional amount as liquidated damages." Id.

Thus, an effective waiver under § 216(c) requires "(a) that the employee agree to accept the payment which the Secretary determines to be due and (b) that there be 'payment in full.'" Sneed v. Sneed's Shipbuilding, Inc., 545 F.2d 537, 539 (5th Cir. 1977).[1] Payment in full does not mean payment of all back wages claimed by the employee, rather, "[s]ection 16(c) requires 'payment in full' of the agreed amount, not of the underlying claim. The statute is concerned with settlements, and a settlement is a compromise - the employee surrenders his opportunity to get 100 cents on the dollar, in exchange for a smaller payment with certainty." Walton v. United Consumers Club, Inc., 786 F.2d 303, 305 (7th Cir. 1986). Thus, once an employee has agreed to accept the DOL-supervised payment, and receives the full amount of that payment, the employee has waived his right to sue.

In this case, Plaintiffs contend that they are owed more overtime, but there is no allegation that Williams and Blackwell did not receive the full amount that the DOL determined they were owed by UDS. See [Doc. #79]. Therefore, the "payment in

---

[1] In Bonner v. City of Pritchard, 661 F.2d 1206 (11th Cir. 1981), the United States Court of Appeals for the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.

full" prong is satisfied here, and the only issue is whether Plaintiffs agreed to accept the settlement.

    1.   <u>An Agreement to Accept Settlement under Section 216(c) is Created by Notice to the Employee and the Employee's Cashing the Check</u>

An agreement to accept a settlement under § 216(c) requires both payment and a release. <u>Walton</u>, 786 F.2d at 306.  In <u>Walton</u>, the United States Court of Appeals for the Seventh Circuit held that, because the plaintiff-employees had not received a WH-58 form or other similar document with their back wages checks, the act of cashing the checks was insufficient to waive their right to sue under the FLSA.  <u>Id.</u> at 306-07. However, other courts have concluded that when the plaintiff-employee does receive a WH-58 form along with his or her check, cashing the check signifies acceptance of the settlement, even if the employee does not sign the WH-58 form.  <u>E.g.</u>, <u>Bullington v. Fayette County Sch. Dist.</u>, 540 S.E.2d 664, 666-67 (Ga. Ct. App. 2000); <u>Mion v. Aftermarket Tool & Equip. Group</u>, 990 F.Supp. 535, 540-41 (W.D.Mich. 1997); <u>Heavenridge v. Ace-Tex Corp.</u>, 1993 WL 603201, at *3 (E.D.Mich. 1993).

For example, in <u>Mion</u>, plaintiff Mion received a check from her former employer for back wages owed to her.  <u>Mion</u>, 990 F.Supp. at 536.  The check was accompanied by a WH-58 form.  <u>Id.</u> at 536-37.  Mion cashed the check but refused to sign the form. <u>Id.</u> at 537.  The court held that Mion had nonetheless waived her right to sue for back wages under the FLSA, because the express terms of the release form "predicated waiver on Mion's acceptance of [her employer's] payment, and not on Mion's signature."  <u>Id.</u> at 541.  Similarly, in <u>Bullington</u>, the Georgia

9

Court of Appeals concluded that the plaintiff's acceptance of payment was sufficient to waive his right to sue because the plaintiff had received a release form informing him that acceptance of the check would waive his right to sue. Bullington, 540 S.E.2d at 667.

In this case, it is undisputed that Plaintiffs received a WH-58 form and a UDS check. The WH-58 form informed them that "[y]our acceptance of back wages due under the Fair Labor Standards Act means that you have given up any right you may have to bring suit for back wages under Section 16(b) of that Act." Having received this information, both Plaintiffs cashed their checks.

Plaintiffs attempt to distinguish their case from the cited cases by arguing that neither Plaintiff made a knowing waiver of his rights. [Doc. #79 at 18-20]. Plaintiffs state that Williams did not read the WH-58 form, and therefore there is no basis for finding that he knew he was waiving his right to sue by cashing the check. Id. at 19. Plaintiffs also state that Blackwell interpreted the language in the WH-58 form to mean that he only waived his right to sue if he received payment of all back wages, but because Blackwell believed he had not received full payment, he thought he could retain the payment without giving up his right to sue. Id. at 19-20. Blackwell also claims that a DOL representative told him he did not have to sign the WH-58 form, but that he could keep the check. Id. at 20; Declaration of Michael Blackwell at ¶ 25 [Doc. #80-6].

There are two problems with Plaintiffs' arguments here. First, the relevant cases do not state that a plaintiff-employee

must "knowingly" waive his right to sue. In Bullington, Mion, and Heavenridge, the knowledge of the plaintiff is neither emphasized by the courts nor made an explicit part of their holdings. See Bullington v. Fayette County Sch. Dist., 540 S.E.2d 664, 667 (Ga. Ct. App. 2000); Mion v. Aftermarket Tool & Equip. Group, 990 F.Supp. 535, 541 (W.D.Mich. 1997); Heavenridge v. Ace-Tex Corp., 1993 WL 603201, at *3 (E.D.Mich. 1993). Rather, the fact that the checks were accompanied by a form stating that acceptance of payment constitutes waiver was found sufficient to effectuate a waiver.

Second, requiring that an employee "knowingly" waive his or her right to sue would eviscerate the purpose of the waiver provision. As the Fifth Circuit stated in Sneed,

> The waiver provision found in section 216(c) was added to the Act in 1949. Prior to that time employers had been reluctant to reach voluntary settlement with employees over claims for back wages because courts had held that any purported waiver or release of rights as to unpaid compensation was null and void as against public policy and lacking in consideration. Thus an employer who settled a claim for back wages could never be sure that the employee with whom he settled would not later sue to collect liquidated damages and attorneys' fees. The addition of the waiver provision was intended to change this situation and create an incentive for employers voluntarily to accept settlements supervised by the Wage and Hour Division.

Sneed, 545 F.2d at 539. Under Plaintiffs' approach, an employee could accept a settlement check, claim that he or she never read or did not understand the WH-58 form, and still sue for additional back wages, liquidated damages, and/or attorneys' fees. This would eliminate the incentive for employers to participate in DOL-supervised settlements, since the settlement

could be reopened at any moment before the statute of limitations expired.

In addition, the Court notes that the DOL sends the WH-58 form with the check for back wages, meaning that receipt of the check is not dependent on the employee having signed the WH-58 form. In this case, Blackwell was given the WH-58 form and his check at the same time, Declaration of Michael Blackwell [Doc. #80-6 at ¶ 19], and Williams received the WH-58 form in the mail, followed by his check. Declaration of Jimmy Williams at ¶¶ 4, 9 [Doc. #80-7].

The Court concludes that receipt of a WH-58 form and cashing of the employer's check is sufficient to effect a waiver of the right to sue under the FLSA. As a result, both Plaintiffs have waived their right to sue.

Blackwell's allegation that a DOL representative told him he could keep the check without signing the WH-58 form does not change the result here. In his deposition, Blackwell testified that he read the WH-58 form, and that no one informed him that cashing the check would waive his right to sue under the FLSA. Deposition of Michael Blackwell at 69, 72-73 [Doc. #53]. In his declaration, Blackwell stated that "[t]he [DOL] representative told me that it was okay for me not to sign the form, and that I could keep the check anyway." Declaration of Michael Blackwell at ¶ 25 [Doc. #80-6]. The DOL representative's statement is not inconsistent with the case law; because receipt of the WH-58 form serves as notice that cashing the check will waive an employee's right to sue, it is unnecessary to sign the form in order to retain the check. Therefore, Blackwell had notice of

12

the waiver provision, and the cashing of his check served to effectuate the waiver. Accordingly, Defendants are entitled to summary judgment on both Plaintiffs' claims.

    B.    <u>Applicability of the Motor Carrier Exemption</u>

Although the Court has determined that Defendants are entitled to summary judgment because Plaintiffs have waived their right to sue, the Court will address Defendants' other arguments here for the sake of completeness in the event of an appeal. Defendants have also moved for summary judgment on the grounds that the Motor Carrier Exemption is applicable here, exempting Defendants and their employees from the overtime provisions of the FLSA. [Doc. #72 at 6 <u>et seq.</u>]. Plaintiffs contend that Defendants have not proven that the Motor Carrier Exemption applies in this case; specifically, Plaintiffs argue that the interstate element of the exemption is not met, and that Plaintiffs performed activities not covered by the exemption. [Doc. #79 at 10 <u>et seq.</u>].

    1.    <u>Plaintiffs' supplemental summary judgment response</u>

Plaintiffs also argue, in their filing entitled "Plaintiffs' Supplemental Opposition to Defendants' Motion for Summary Judgment," that Defendants apply the incorrect test for determining whether the interstate element of the exemption is met. [Doc. #84]. This supplemental response was filed almost three months after Plaintiffs' initial response to the summary judgment motion was filed. <u>See</u> [Dkt.]. Defendants have filed a motion to strike Plaintiffs' supplemental response. [Doc. #85].

Under Local Rule 56.1(A), "the parties shall not be permitted to file supplemental briefs and materials, with the

13

exception of a reply by the movant, except upon order of the court." Local Rule 56.1(A), N.D. Ga.  Here, Plaintiffs have not filed a motion for leave to file a surreply. See [Dkt.]. Although the Court may, in its discretion, permit the filing of a surreply, a surreply should be allowed "only where a valid reason for such additional briefing exists, such as where the movant raises new arguments in its reply brief." Fedrick v. Mercedes-Benz USA, LLC, 366 F.Supp.2d 1190, 1197 (N.D. Ga. 2005). Here, the arguments which Plaintiffs address in their supplemental brief were first raised in Defendants' initial brief in support of their motion for summary judgment, and Plaintiffs have offered no explanation for why they failed to address them fully in the initial response. See [Doc. #84]. Accordingly, the Court sees no reason to permit Plaintiffs' additional briefing, and GRANTS Defendants' motion to strike the supplemental response.

    2.   **There is a genuine issue of material facts regarding the applicability of the Motor Carrier Exemption**

In regard to Defendants' motion for summary judgment on the basis of the Motor Carrier Exemption, there is a genuine issue of material fact regarding whether the exemption applies in this case. Under the Motor Carrier Exemption, employees "with respect to whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 204 of the Motor Carrier Act" are exempted from overtime eligibility. 29 U.S.C. § 213(b)(1). The Secretary of Transportation has this power "for employees who (1) are employed by the carriers whose transportation of

passengers or property by motor vehicle is subject to the Secretary's jurisdiction under the Motor Carrier Act; and (2) engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act." Baez v. Wells Fargo Armored Car Serv. Corp., 938 F.2d 180, 181-82 (11th Cir. 1991).

In this case, the parties do not dispute that UDS is a carrier subject to the power of the Secretary of Transportation. Rather, Plaintiffs contend that the Motor Carrier Exemption is inapplicable because Defendants have not demonstrated that the interstate element is satisfied and because Plaintiffs engaged in activities not covered by the exemption. Plaintiffs' latter argument is misplaced; the Supreme Court has made clear that "[i]t is the character of the activities rather than the proportion of either the employee's time or of his activities" that determines whether the exemption applies. Levinson v. Spector Motor Serv., 330 U.S. 649, 674-75, 67 S.Ct. 931, 944 (1947). It is undisputed that Plaintiffs were drivers for UDS and that part of their duties was to ensure the safety of the trucks they drove. [Docs. #72-3 at ¶¶ 21, 25, 32, #79-2 at ¶¶ 21, 25, 32]. Driving their own cars to job sites on occasion is insufficient to remove Plaintiffs from the exemption. See Badgett v. Rent-Way, Inc., 350 F.Supp.2d 642, 644, 654 (W.D. Pa. 2004) (holding that employees who sometimes drove their own vehicles to make deliveries or collect rental payments were engaged in activities that directly affected motor safety).

15

However, there is a genuine issue of material fact regarding the interstate requirement that precludes a grant of summary judgment to Defendants on this issue. In order for the Motor Carrier Exemption to apply, Plaintiffs must have participated in the interstate transportation of goods. The exemption will still apply even if the goods transported by Plaintiffs did not actually cross state lines, as long as there was a "practical continuity of movement" in interstate commerce. <u>Walling v. Jacksonville Paper Co.</u>, 317 U.S. 564, 568, 63 S.Ct. 332, 335 (1943). Such continuous movement exists "if there is fixed and persisting transportation intent beyond the terminal storage point at the time of shipment." <u>DeMaria v. Ryan P. Relocator Co.</u>, 512 F.Supp.2d 1249, 1255 (S.D. Fla. 2007).

To support their claim that the Motor Carrier Exemption applies, Defendants have offered deposition and declaration testimony, but no documentary evidence. Through their own declarations and depositions, Plaintiffs contradict much of what Defendants assert. The testimony submitted by Defendants does not provide a coherent picture of how drywall orders were received, processed, and filled during Plaintiffs' employment as drivers. While Defendants assert that they ordered the vast majority of their drywall from out-of-state suppliers, it is not clear that, at the time of the orders, there was a "fixed and persisting transportation intent." Rather, the testimony of UDS' purchasing agent, Debra Cooper, indicates that sometimes orders were filled from what UDS had in the warehouse, and sometimes UDS ordered additional drywall to fill upcoming orders. Deposition of Debra Cooper at 14, 27-28 [Doc. #75].

Exemptions under the FLSA are narrowly construed against the employer, and the employer has the burden of proving that the exemption applies. O'Neal v. Barrow County Bd. of Comm'rs, 980 F.2d 674, 676-77 (11th Cir. 1993). UDS has not met its burden here. There is a genuine issue of material fact regarding whether the interstate element of the Motor Carrier Exemption is met. Accordingly, if Plaintiffs had not waived their right to sue, Defendants would not be entitled to summary judgment on this issue.

    C.    Appropriate Statute of Limitations

Finally, Defendants argue that the two-year statute of limitations should apply in this case because there is no evidence supporting Plaintiff's claim that Defendants willfully violated the FLSA overtime provisions. [Doc. #72 at 19]. Plaintiffs contend that there is sufficient evidence to create a genuine issue of material fact regarding whether Defendants' FLSA violation was willful.

The FLSA has a two-year statute of limitations, but extends the statute of limitations to three years for willful violations. 29 U.S.C. § 255(a). An employer willfully violates the FLSA if he "either knew or showed reckless disregard for the matter of whether [his] conduct was prohibited by the statute." McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133, 108 S.Ct. 1677, 1681 (1988).

In this case, Blackwell alleges that the UDS payroll manager told him that Chenggis knew how to calculate the correct overtime pay, but had instructed her to pay the drivers less than the correct amount. Declaration of Michael Blackwell at ¶¶

17

11, 12 [Doc. #80-6]. This allegation is sufficient to create a genuine issue of material fact regarding what Chenggis knew and whether the FLSA overtime violations were therefore willful. If Plaintiffs had not waived their right to sue, Defendants would not be entitled to summary judgment on the statute of limitations issue.

IV. Conclusion

The Court has carefully considered the parties' briefs and other submissions. Williams having abandoned his claim for retaliation, the claim is DISMISSED. Defendants' motion to strike Plaintiffs' supplemental summary judgment response [#85] is GRANTED. Because Plaintiffs have waived their right to sue, Defendants' motion for summary judgment [#72] is GRANTED.

SO ORDERED, this ___ day of June, 2009.

_____
ORINDA D. EVANS
UNITED STATES DISTRICT JUDGE